**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

SETH ANDREW,

               Petitioner-Movant, Pro Se

    v.

UNITED STATES OF AMERICA,

          Respondent.

Crim. No. 1:22-Cr-32-1 (JPC)

Civ. No. ___-cv-_____ (JPC)

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE,**

**SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255**

**I.  INTRODUCTION AND SUMMARY OF ARGUMENT**

**Petitioner Seth Andrew submits this Memorandum of Law in support of his Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255.** This Memorandum is filed pro se before the expiration of supervised release on or about May 15, 2026, to preserve federal jurisdiction. Petitioner is "in custody" within the meaning of § 2255(a). *Jones v. Cunningham*, 371 U.S. 236 (1963); *Earley v. Murray,* 451 F.3d 71 (2d Cir. 2006). This Memorandum tracks the structure of the Motion and supplements the legal authorities supporting each ground.

**The principal argument is straightforward: Petitioner's plea record looks like a conventional property-fraud admission only because conflict-burdened counsel shaped it that way.** Counsel suppressed Petitioner's contemporaneous authorization objections, failed to preserve then-developing fraud-law defenses and materiality/inducement issues later clarified by Ciminelli, Percoco, and Kousisis, as applicable, failed to use materially exculpatory *Brady* disclosures made days before sentencing, abandoned PSR objections counsel had themselves drafted, and intervened mid-allocution to redirect Petitioner away from his own truthful answer.

**This § 2255 Motion attacks the constitutional reliability of the record itself.** *Massaro v. United States*, 538 U.S. 500 (2003), is the answer to any "should have raised on direct appeal" objection: Ineffective Assistance of Counsel (IAC) claims are ordinarily appropriate for § 2255 because the appellate record is incomplete and factual development is required.

**Petitioner respectfully requests that this Court refer the contemporaneously-filed Reassignment Motion under § 455(a) to the Chief Judge of this District; defer merits review until the reassignment question is resolved; appoint conflict-free counsel if a hearing may be warranted; authorize limited Rule 6 discovery; expand the record under Rule 7; hold an evidentiary hearing under § 2255(b) and Rule 8; and, on a developed record, vacate the conviction and sentence; Petitioner expressly reserves but does not seek immediate monetary return under** *Nelson v. Colorado,* **581 U.S. 128 (2017).**

The disputed factual questions on which Grounds One through Five depend are summarized in the **Hearing-Required-Facts Table at Section II of the Motion** (Motion at pp. 3–5) and the **§ 2255(b) Summary Table** that immediately follows. Each row identifies a disputed fact, the principal exhibits, the witness or discovery needed, and the reason the existing record cannot conclusively resolve the dispute. The standard under § 2255(b) is therefore satisfied as to each Ground.

## II.  TIMELINESS AND JURISDICTION

### A.  *Custody Drives the Filing*

**The operative driver of this filing is the expiration of supervised release on or about May 15, 2026.** Petitioner is "in custody" for § 2255 purposes because supervised release qualifies as custody under *Jones v. Cunningham*, 371 U.S. 236 (1963); *Earley v. Murray*, 451 F.3d 71, 75 (2d Cir. 2006); and *Scanio v. United States*, 37 F.3d 858, 860 (2d Cir. 1994). Petitioner files this Motion on May 14, 2026 to preserve federal jurisdiction.

### B.  *Statutory Limitations — Conservative Alternative Pleading*

**Petitioner respectfully does not rely on § 2255(f)(1).** Petitioner does not contend that (f)(1) sustains a May 14, 2026 filing. Petitioner relies on the following anchors, in the alternative.

### *(1)  Equitable Tolling — Holland*

*Holland v. Florida,* **560 U.S. 631 (2010), permits equitable tolling on a showing of (i) diligence and (ii) extraordinary circumstances.** The Second Circuit's framework is set out in *Doe v. Menefee*, 391 F.3d 147, 159 (2d Cir. 2004). Petitioner's diligence record from the November 19, 2024 mandate forward is set out in detail in Ex. P (Diligence Declaration) and is corroborated on the public dockets by: (i) Petitioner's January 17, 2025 pro se sworn affidavit /

FRAP 35 petition for en banc rehearing (2d Cir. Doc. 196; Ex. I), which the court declared defective on the same day (2d Cir. Doc. 197) and struck from the docket on February 12, 2025 (2d Cir. Doc. 200) — procedural barriers to a pro se filer that themselves evidence diligent attempts to preserve Petitioner's post-conviction rights; (ii) Petitioner's pro se letter to this Court dated March 20, 2025, filed March 24, 2025 (Doc. 57-2; Ex. O), which formally placed on this Court's docket — approximately fourteen months before this Motion's May 14, 2026 filing — the same theories now pleaded; and (iii) further correspondence to the Second Circuit in March 2025 (2d Cir. Docs. 202–203), returned in the closed case. The full diligence chronology is collected at Ex. A (Case Timeline) and Ex. P (Diligence Declaration).

Petitioner's diligence is independently corroborated by the U.S. Probation Department's affirmative February 21, 2025 recommendation that Petitioner's supervised release be terminated early (Ex. V, Probation Form 35). The Probation Department — a neutral institutional actor with no stake in this § 2255 motion — described Petitioner's adjustment as "satisfactory" and noted that financial obligations had been fully paid. The Probation Department's recommendation is institutional evidence of post-conviction rehabilitation, sustained compliance with supervised-release conditions, and good-faith engagement with the supervising court — each of which supports the extraordinary-diligence prong of *Holland v. Florida*, 560 U.S. 631 (2010), and *Doe v. Menefee*, 391 F.3d 147, 159 (2d Cir. 2004). The U.S. Probation and Pretrial Services officers named in Ex. V (Donohue, Jackson, Millan, Osman, Velez, Leung, Valentine, Lorick, Spence, and Tady) are identified as potential discovery witnesses on Petitioner's diligence and state of mind.

**The extraordinary circumstances are independently substantial:** (a) despite numerous efforts by the Petitioner, the institutional conflict caused by Mr. Kim's leadership of SDNY from December 13, 2024 to approximately March 31, 2025, precluded retention of conflict-free counsel willing to attack the constitutional adequacy of representation provided by the then *sitting* Acting U.S. Attorney; (b) co-counsel Gumaste's continuing service as an AUSA at SDNY through and beyond Kim's departure to this day; (c) financial constraints lifted only by the January 16, 2025 sale of the family residence; and (d) the Government's continuing adversarial posture under Mr. Kim's leadership, including AUSA Finkel's March 7, 2025 opposition (D.C. Doc. 56) — filed while Mr. Kim was still serving as Acting U.S. Attorney — to the Probation Department's February 21, 2025 affirmative recommendation (D.C. Doc. 55) that Petitioner's supervised release be terminated early. Each of these constraints is documented; none depends on Petitioner's subjective characterization.

### *(2)  § 2255(f)(3) — Kousisis (Pleaded in the Alternative)*

While Petitioner's direct appeal was pending at the Second Circuit (No. 22-1749) from August 11, 2022 through November 19, 2024, Kousisis v. United States was pending before the

Supreme Court. The Supreme Court later clarified the materiality and inducement standard in Kousisis.

**Kousisis v. United States, 605 U.S. ___, 145 S. Ct. 1382 (2025) (decided May 22, 2025), is the Supreme Court's most recent articulation of the materiality element of § 1343. Petitioner contends — as Petitioner's contention, not as a holding Kousisis compelled — that the developed record will not satisfy that element.** Petitioner pleads under § 2255(f)(3) only the discrete claims for which *Kousisis*'s clarification of materiality and inducement provides a newly recognized right. Petitioner pleads § 2255(f)(3) conditioned on this Court's determination that the *Kousisis* right was newly recognized and made retroactively applicable to cases on collateral review. The one-year (f)(3) period runs to May 22, 2026; this Motion is within that period. The (f)(3) anchor is pleaded in the alternative; the custody-driven deadline (Section II.A) and the Holland equitable-tolling anchor set out above and the § 2255(f)(4) anchor set out below are independently sufficient regardless of how the Court rules on Kousisis.

### (3)  Actual-Innocence Gateway — McQuiggin / Schlup / Bousley

*McQuiggin v. Perkins*, 569 U.S. 383 (2013), and *Schlup v. Delo*, 513 U.S. 298 (1995), permit a petitioner to proceed on the merits notwithstanding statutory limitations bars where the petitioner makes a credible showing of actual innocence. *Bousley v. United States,* 523 U.S. 614, 623–24 (1998), requires factual innocence (not merely legal insufficiency) of the offense of conviction and of any forgone charges. Petitioner addresses the forgone bank-fraud, false-statement, and money-laundering theories in Section VII below.

### (4)  § 2255(f)(4) — Newly Discovered Facts

**Section 2255(f)(4) runs from "the date on which the facts supporting the claim … could have been discovered through the exercise of due diligence."** The conflict facts underlying Ground One could not have been discovered before Mr. Kim's March, 2025 departure from the role of Acting U.S. Attorney for SDNY and Petitioner believes Mr. Gumaste remains an SDNY AUSA today. Petitioner pleads (f)(4) in the alternative, in conjunction with equitable tolling, to bridge to the May 14, 2026 filing.

### C.  The March 20, 2025 Letter Is Diligence Evidence, Not a § 2255(f) Trigger

Petitioner's pro se letter to this Court — dated March 20, 2025, filed March 24, 2025 (Doc. 57-2; Ex. O) — was filed approximately fourteen months before this Motion's May 14, 2026 filing. Petitioner does not invoke the March 2025 letter as a § 2255(f) trigger. The letter is offered solely as contemporaneous documentary evidence of (i) diligence under *Holland*; (ii) non-post-hoc framing of the legal theories now formally pleaded; and (iii) preservation of the claims this Court will now consider.

## III.  THE DIRECT APPEAL DOES NOT BAR THESE CLAIMS

**Petitioner does not re-argue *Ciminelli* on this collateral record.** *Massaro.* The Second Circuit by summary order on September 26, 2024 (2d Cir. Doc. 192) treated Petitioner's plea-colloquy admissions as a traditional-property-fraud admission and rejected the *Ciminelli* right-to-control argument on that record.  forecloses any procedural-default objection to the IAC claims: such claims "may be brought in the first instance in a timely motion in the district court under § 2255, whether or not the petitioner could have raised the claim on direct appeal." Id. This is because the trial record is ordinarily "inadequate" to resolve IAC claims, which depend on facts "outside the trial record." Id. at 504–05. Even where a doctrine-of-the-case or procedural-default question is presented, cause and prejudice are amply demonstrated by the conflict-burdened representation; *Strickland* prejudice is itself sufficient to establish cause under *Edwards v. Carpenter*, 529 U.S. 446 (2000), and *Murray v. Carrier*, 477 U.S. 478 (1986). *Coleman v. Thompson*, 501 U.S. 722 (1991), does not bar these claims because the IAC ground was, by its nature, not effectively raisable on direct appeal.

## IV.  GROUND ONE — CONFLICT-BURDENED COUNSEL / ADVERSE EFFECT

### A.  *Legal Framework — Cuyler, Strickland, and Mickens*

**The Sixth Amendment guarantees "adequate legal assistance" by counsel "unhindered by a conflict of interest" (*Cuyler*).** In the multiple-representation context, prejudice is presumed where the defendant shows that an actual conflict adversely affected counsel's performance. Id. at 349–50. The Second Circuit applies the *Cuyler* adverse-effect framework where the conflict implicates counsel's loyalties beyond a single client. *Armienti v. United States*, 234 F.3d 820, 824 (2d Cir. 2000) ("actual conflict" exists "when, during the course of the representation, the attorney's and defendant's interests diverge with respect to a material factual or legal issue or to a course of action"); *United States v. Schwarz*, 283 F.3d 76, 91 (2d Cir. 2002).

**Petitioner pleads *Cuyler/Armienti/Schwarz* adverse effect in the alternative with *Strickland/Hill/Lee* but-for prejudice.** Under *Strickland*, and *Hill*, Petitioner must show a reasonable probability that, but for counsel's deficient performance, he would not have pleaded guilty; *Lee* clarifies that the "reasonable probability" standard does not require a showing that trial would have produced an acquittal.

### B.  *Adverse Effect — Conflict Paired with Foregone Strategy*

**Petitioner identifies four concurrent conflicts and the alternative defense strategies counsel did not pursue.** For each pairing, an evidentiary hearing is required to develop the factual record under § 2255(b).

**Lead counsel's close personal friendship with the presiding judge — partially disclosed at the plea hearing (Plea Tr. (D.C. Doc. 32) at 3–4; Ex. E) but never independently advised.** The alternative strategy: independent recusal advice through limited conflict counsel. Counsel whose own friendship was at issue could not impartially advise on whether to seek recusal or waive any objection.

**Lead counsel's subsequent return to and leadership of SDNY (Acting U.S. Attorney through approximately March 31, 2025).** The alternative strategy: aggressive *Brady* and misconduct preservation; vigorous certiorari and post-conviction posture; advice to Petitioner regarding institutional impediments to retaining post-conviction counsel; and, once Mr. Kim assumed leadership of SDNY, a request that SDNY screen itself off Petitioner's ongoing post-conviction matters and refer further adversarial action to another U.S. Attorney's Office or to Main DOJ. Counsel's future or ongoing relationships with the prosecuting office made adversarial posture costly.

**Co-counsel Gumaste's parallel migration to SDNY as an AUSA during the Petitioner's appeal.** The alternative strategy: disclosure of the impending migration; conflict waiver or counsel substitution; aggressive defense posture. Same office that would defend the conviction collaterally.

**Counsel's economic incentive against trial under the retainer structure.** The Krieger Kim & Lewin LLP Retainer Agreement (Ex. L) provided for a $100,000 total retainer at engagement; Kim later advised that a full-trial budget is in the range of $1.5–2.0 million and that after a review of Petitioner's personal finances he did not believe there were sufficient funds to make it through trial and/or appeal. Once accepted, each additional hour past retainer was likely to be unfunded; the rational economic course for counsel was quick disposition. The alternative strategy: full trial preparation, including all suppression, Daubert, and Rule 29 grounds, and full investigation of authorization and Brady issues.

### C.  Documented Adverse Effects on the Plea and Sentencing Record

**Each conflict was paired with a documented adverse effect on Petitioner's representation.** The contemporaneous record (Exs. B, C) reflects more than a dozen written disagreements during December 2021 and January 2022 in which Petitioner resisted admissions he believed were untrue or non-criminal. The mid-colloquy intervention at the plea hearing (Plea Tr. (D.C. Doc. 32) at 35; Ex. E), and the July 13–14, 2022 "qualifying authorization" email episode (Ex. C), are concrete examples of counsel actively suppressing Petitioner's authorization position. Counsel's "None from the defense, your Honor" statement on July 28, 2022 (Sentencing Tr. (D.C. Doc. 51) at 9; Ex. G) abandoned the factual record counsel had themselves teed up in the March 16, 2022 Brady letter (Ex. N) and in the PSR-objection drafts (Ex. D).

## V.  GROUND TWO — INVALID PLEA / COUNSEL-SHAPED ALLOCUTION

**A guilty plea is constitutionally valid only if it is knowing, voluntary, and intelligent; this plea was none of these.** *Boykin v. Alabama*, 395 U.S. 238 (1969); *Brady v. United States*, 397 U.S. 742 (1970). The plea-colloquy admissions are entitled to a "strong presumption of verity," *Blackledge v. Allison*, 431 U.S. 63, 74 (1977), but that presumption is not absolute and does not foreclose § 2255 relief where the petitioner alleges that conflict-burdened counsel shaped the colloquy itself. Id. at 73–74; *United States v. Doe*, 537 F.3d 204, 213–14 (2d Cir. 2008).

**The standard plea-colloquy admissions cannot conclusively defeat a § 2255 motion where the motion alleges that conflict-burdened counsel shaped the colloquy itself.** Section 2255(b) requires an evidentiary hearing unless the motion, the files, and the records of the case "conclusively" show that the prisoner is entitled to no relief. *Chang v. United States*, 250 F.3d 79, 85–86 (2d Cir. 2001); *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009). Petitioner's claim turns on what conflict-free counsel would have advised, and how Petitioner would have responded; that inquiry cannot be resolved on the existing appellate record.

**The chronology of counsel-shaped plea record is summarized in the Motion (Ground Two) and is supported by Exs. B (Dec. 28, 2021 redlined allocution); C (contemporaneous emails with counsel May 2021–July 2022, including the May 28, 2021 "I can't / won't plea" email, the January 5, 2022 Kim email, and the July 13–14, 2022 "qualifying authorization" chain); E (plea-colloquy excerpts pp. 3–4 and 34–36, D.C. Doc. 32); N (Mar. 16, 2022 KKL Brady letter); and G (Sentencing Transcript excerpts pp. 9, 14–15, 37, and 48, D.C. Doc. 51).**

## V.A.  WHY THE PLEA COLLOQUY DOES NOT CONCLUSIVELY DEFEAT THIS MOTION

**The Government's strongest anticipated response is that Petitioner pleaded guilty, confirmed the factual basis under oath, and that the plea transcript controls.** Petitioner's answer is not that the plea transcript is irrelevant. Petitioner's answer is that **the plea transcript itself contains the factual dispute**, and the surrounding record outside the colloquy shows precisely why the colloquy cannot "conclusively" resolve the questions presented under 28 U.S.C. § 2255(b).

First, Petitioner contemporaneously inserted the word "written" before "authorization from Democracy Prep" in the December 28, 2021 redlined draft allocation (Ex. B), narrowing his admission to *written* authorization only, because he had verbal, statutory, regulatory, and fiduciary authorization. Second, Petitioner contemporaneously emailed lead counsel on May 28, 2021 that he had authority and would not plead to something he did not do (Ex. C). Third, the plea transcript itself preserves both the "written authorization" limitation and lead counsel's mid-

colloquy intervention ("Your Honor, may we have one moment?") followed by the post-pause clean-up "Correct, your Honor" (Plea Tr. (Doc. 32) at 34–36; Ex. E). Fourth, lead counsel later stated at sentencing "None from the defense, your Honor" (Sentencing Tr. (Doc. 51) at 9; Ex. G) despite the PSR-objection drafts (Ex. D) and Brady disputes (Exs. H, N, R) that counsel had themselves developed in writing. Fifth, the Plea Agreement expressly preserves Petitioner's right to assert ineffective-assistance-of-counsel claims (Ex. W) — the very claims raised here.

Section 2255(b) requires an evidentiary hearing unless the motion, the files, and the records of the case "conclusively" show that the prisoner is entitled to no relief. *Chang v. United States*, 250 F.3d 79, 85–86 (2d Cir. 2001); *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009). The contemporaneous record above, combined with counsel's undisclosed conflicts, demonstrates that the plea record cannot conclusively resolve the voluntariness, advice, and conflict questions that Petitioner now raises. A hearing is therefore required.

## VI.  GROUND THREE — BRADY / RULE 5(f) AS IAC AND PREJUDICE

### A.  *Petitioner Does Not Plead a Freestanding Pre-Plea Impeachment-Brady Theory*

As a threshold matter, the Plea Agreement dated January 3, 2022 (Ex. W) expressly preserves Petitioner's ineffective-assistance-of-counsel claims. The Agreement provides: "Notwithstanding the foregoing, nothing in this paragraph shall be construed to be a waiver of whatever rights the defendant may have to assert claims of ineffective assistance of counsel, whether on direct appeal, collateral review, or otherwise. Rather, it is expressly agreed that the defendant reserves those rights." The IAC grounds asserted herein are therefore not subject to any plea-waiver bar. See Garza v. Idaho, 586 U.S. 232 (2019); United States v. Tetzlaff, 896 F.3d 873, 878 (7th Cir. 2018).

**Petitioner accepts the limit from *United States v. Ruiz*, 536 U.S. 622 (2002) and does not plead a freestanding pre-plea impeachment-*Brady* theory.** However, *Ruiz* expressly did not decide whether materially exculpatory evidence going to factual innocence must be disclosed pre-plea, see id. at 633 (Thomas, J., concurring in the judgment), but Petitioner does not need that step. Petitioner's claim is post-plea IAC: counsel had the eve-of-sentencing a 786-page *Brady* production (Ex. S) and the July 20, 2022 USAO Form 302 correction (Ex. H), and counsel did not move for a continuance, plea withdrawal, or PSR correction. Counsel's failure to act on the late-disclosed exculpatory record was constitutionally deficient under *Strickland*.

### B.  *Sentencing Is a Critical Stage; Counsel's Passivity Was Prejudicial*

**Sentencing is a critical stage at which the Sixth Amendment guarantee of effective assistance applies in full.** *Mempa v. Rhay*, 389 U.S. 128 (1967); *Gardner v. Florida*, 430 U.S. 349 (1977); *Glover v. United States*, 531 U.S. 198 (2001) (even a small increase in sentence supplies

*Strickland* prejudice). The *Brady* disclosures bore on (i) authorization — by identifying Democracy Prep NY and DPPS board members who favored a "slap on the hand" disposition (Ex. R); (ii) materiality and inducement — by correcting the Wells Fargo banker's FBI 302 to clarify the institutional separateness of mortgage and retail-banking functions (Ex. H); and (iii) factual innocence — by demonstrating the absence of any rate-reduction benefit caused by the transfers (Ex. S; Ex. U).

The Government's own *Brady* disclosures confirm that the Board's "unified voice" pressure on Dr. North bore directly on the authorization and mitigation record at sentencing. In the April 8, 2022 letter from AUSA Ryan B. Finkel to Krieger Kim & Lewin LLP (Ex. R), the Government wrote: **"The Government understands that Dr. North may have retracted his statement because the Board felt it important to speak with a unified voice."** That admission — that the institutional Board exerted unified-voice pressure on what individual directors could say to this Court — is independently material under *Strickland* and *Lee*. Counsel's failure to interview, depose, or otherwise develop testimony from Dr. North or the other "slap on the hand" board members the Government identified, despite the Government's express identification of these witnesses as exculpatory or impeachment sources, supports both the deficient-performance and prejudice prongs.

The Government's own March 11, 2022 Brady disclosure (Ex. R) makes the materiality of these eve-of-sentencing disclosures concrete. The letter records that on February 16, 2022, Dr. Robert North, then-Chair of the Democracy Prep New York Board, requested that the following statement be shared with this Court: "Seth stole $200,000 from the students at Democracy Prep which is unforgiveable but he also put a lot of blood, sweat and tears into the creation of a network of Charter Schools that is providing a high quality education to more than 5,000 low income students." The same letter then records that on February 28, 2022 — twelve days later — "Dr. North retracted that statement." The retraction was preceded by communications between the Government and DPPS counsel and the influence on or restriction of board members' statements identified in counsel's own contemporaneous March 16, 2022 Brady letter (Ex. N). Counsel had this materially exculpatory disclosure in hand on the eve of sentencing and made no record of it; the Strickland prejudice inquiry must account for what conflict-free counsel would have done with it.

### C.  *Rule 5(f) / Due Process Protections Act as Context*

**Petitioner pleads the alleged Rule 5(f) / Due Process Protections Act failure narrowly, as context for the IAC and prejudice analysis, not necessarily as an independent freestanding ground.** Rule 5(f) requires a presentment-stage notice of the *Brady* obligation framework. At Petitioner's presentment on April 27, 2021 before Magistrate Judge Gabriel W. Gorenstein, with

then-retained counsel Michael Yaeger of Carlton Fields appearing for Petitioner (D.C. Doc. 4 (minute entry); Doc. 9 (transcript filed June 7, 2021); Ex. F (Presentment Transcript)), **no on-the-record Rule 5(f) / DPPA admonition was given.** The Rule 5(f) Order in this case was not entered until January 16, 2022 (D.C. Doc. 29) — nearly nine months after presentment and two days after the change of plea, by which point the prosecutorial-disclosure framework had no operative effect on Petitioner's plea decision. That failure, taken together with counsel's post-plea passivity in the face of the eve-of-sentencing *Brady* production, illustrates the institutional and individual breakdown in the prosecution-defense disclosure regime in this case.

## VII.  GROUND FOUR — FACTUAL INNOCENCE (CHARGED AND FORGONE THEORIES)

### A.  Bousley Standard

**Actual innocence means factual innocence, not mere legal insufficiency.** *Bousley v. United States*, 523 U.S. 614, 623–24 (1998). Where the Government has forgone charges in exchange for a guilty plea, the petitioner must address those forgone charges as well as the offense of conviction. Id. at 624. The petitioner may meet the standard with admissible evidence beyond the plea record; the Government may rebut with admissible evidence beyond the plea record. Id.

### B.  Factual-Innocence Analysis — Single Charged Wire Fraud Count

**Petitioner is factually innocent of wire fraud under 18 U.S.C. § 1343 because the available evidence supports authorization, notice, and ratification by institutional actors; preservation of funds in fiduciary and regulatory-reserve context; and the absence of any material misrepresentation that induced any victim to part with money or property in the inducement-and-materiality sense *Kousisis* requires.** *Kousisis v. United States*, 605 U.S. ___, 145 S. Ct. 1382 (2025). Petitioner contends that the Government's mortgage-rate-discount motive theory does not satisfy the inducement framework addressed (though not conclusively resolved) in *Kousisis*, because the records (Exs. H, S, U) show that Petitioner's mortgage was already rate-locked at 2.5%; Petitioner's asset levels independently qualified him for the maximum eligible rate-reduction program (eligibility distinct from receipt); and the institutional separateness of Wells Fargo's mortgage banker and verification team negates causation. Independent confirmation that the escrow accounts at issue were not on the books of Democracy Prep Public Schools — and were instead held in fiduciary form for the formally-dissolved entities Democracy Prep Charter School (DPC), Democracy Prep Harlem (DPH, dissolved July 1, 2017 via Regents-approved merger), and Democracy Prep Endurance (DPE, EIN 45-3947399, consolidated entity) for the bank and for whose former Boards Petitioner remained the sole signatory and authorized escrow agent at the time of transfer — appears in Ex. X (DPPS Form 990s).

Petitioner's own contemporaneous correspondence with Wells Fargo (Ex. U), recovered from his preserved Apple Mail archive, directly refutes any theory that he claimed personal ownership of the non-profit funds. On April 10, 2019, in response to a Wells Fargo asset-verification dispute, Petitioner wrote to the bank: "There IS NO OWNERSHIP of a non profit organization. that's the definition of a non profit. I have 100% signer authority over these accounts." The Wells Fargo mortgage banker, Harry Kalvonjian, contemporaneously confirmed the bank's treatment of the funds: "Signing authority is not the same as business ownership. Based on the fact that he is not 100% business owner, we are not able to include these funds in Relationship discount." Petitioner himself labeled the account an "escrow account" in writing to Wells Fargo on October 25, 2019 — well before any investigation. These four email exchanges (the "April 10, 2019 thread" + the "October 25, 2019 Democracy Prep Escrow Account" thread) are appended at Ex. U.

### C.  Forgone Theories

**Petitioner addresses each forgone theory.**

**Bank fraud (18 U.S.C. § 1344). The Government's initial position upon complaint and press-releases was that Wells Fargo was deceived into giving Petitioner a mortgage-rate benefit.** Petitioner's factual answer as demonstrated in the belated *Brady* release was that no rate reduction was received; eligibility for the discount program existed independently on Petitioner's own assets; the retail business banker, the mortgage banker, and the verification team were institutionally separate, as confirmed in Ex. H. *Kousisis* materiality element — which Kousisis addressed but did not conclusively resolve — is, on Petitioner's contention, not satisfied where the alleged misrepresentation did not induce the bank or DPPS to part with money or property, as it was not their account to begin with.

**False statement to a bank (18 U.S.C. § 1014). Same factual answer**. No false statement of material fact induced any bank decision; the mortgage-rate-discount eligibility was independent of any transfer and Petitioner was indeed the duly appointed, never revoked, escrow agent, fiduciary, sole signatory, and fully authorized party to manage the dissolution accounts.

**Money laundering (18 U.S.C. §§ 1956, 1957). If the underlying fraud theory fails for lack of inducement and material deception, the laundering theory falls with it.** The funds were preserved (not concealed) in fiduciary form; the CD vehicle was disclosed and contemporaneously documented to numerous parties including shared accountants, board members, CEO, Acting CFO, and other executives (Ex. Q (CSBM bookkeeping communications); Ex. K (March 11, 2019 Offutt email)).

### D.  Kousisis Is Used Correctly Here, Not as a No-Loss Argument

***Kousisis* is not a retrenchment of wire fraud and Petitioner does not argue that the absence of economic loss is dispositive by itself.** However, Petitioner argues that the plea record and available evidence do not establish a materially false representation that induced a relevant victim to part with money or property — because authorization, notice, and ratification evidence exists; the funds were preserved; and the mortgage-rate theory lacks causation. This is precisely the inducement-and-materiality inquiry *Kousisis* — the unanimous Supreme Court decision that addressed fraudulent inducement, without resolving the proper materiality standard for § 1343 — implicates.

### *E.  Ciminelli Distinguished, Not Re-Argued*

*Ciminelli v. United States*, 598 U.S. 306 (2023), rejected the Second Circuit's right-to-control theory of wire fraud and reaffirmed that federal fraud statutes reach traditional property interests, not intangible economic-information interests. The Second Circuit on direct appeal in this case treated Petitioner's plea-colloquy admissions as a traditional-property-fraud admission and on that basis rejected Petitioner's *Ciminelli* argument. Petitioner does not re-litigate *Ciminelli* on this collateral record. The constitutional question on § 2255 is not the doctrinal label applied to the plea record; it is the reliability of the plea record itself (*Massaro).*

## VIII.  GROUND FIVE — FAILURE TO INVESTIGATE

**Counsel's duty under *Strickland* includes the duty to investigate (466 U.S. at 690–91).** The duty is heightened where the record contains specific indications of materially exculpatory evidence. *Wiggins v. Smith*, 539 U.S. 510, 521–25 (2003); *Pavel v. Hollins*, 261 F.3d 210, 225–27 (2d Cir. 2001). Counsel did not interview, depose, or develop testimony from the following institutional witnesses, despite specific identification in the contemporaneous record: officials of the SUNY Charter Schools Institute (Ex. T); the Wells Fargo mortgage banker ("Employee-2") and the asset-verification team referenced in the July 20, 2022 USAO letter (Ex. H); Dr. Robert North (Ex. R); Charter School Business Management (CSBM) (Ex. Q); and Democracy Prep Public Schools and DPNY board members whom the Government's own *Brady* disclosure (Ex. R) identified as having expressed the view that Petitioner deserved "a slap on the hand." The prejudice inquiry is not severable from the failure-to-investigate claim; a developed factual record on these witnesses would have given conflict-free counsel the materials to preserve authorization and inducement defenses, to move for plea withdrawal or PSR correction in light of the eve-of-sentencing *Brady* disclosures, and to take an adversarial posture at sentencing.

## IX.  ADDITIONAL FACTS RELEVANT TO THE PREJUDICE INQUIRY

**Petitioner identifies the following facts as relevant to the prejudice analysis under** *Strickland/Hill/Lee* **and** *Cuyler/Armienti*. Petitioner pleads each fact on his own personal knowledge or on information and belief subject to Rule 6 discovery; he does not invite this Court to assume any fact that the developed record does not support.

**The Government issued three press releases regarding Petitioner — at arrest (April 27, 2021), at plea (January 14, 2022), and at sentencing (July 28, 2022).** All three were issued by the SDNY Complex Frauds and Cybercrime Unit, which Mr. Kim had led in 2016–2017. The releases described Petitioner with a public-facing institutional and political framing. Petitioner attaches the three press releases as Ex. M and reserves the right to address specific factual disputes about the releases at evidentiary hearing.

**The Government's institutional posture continued after sentencing**. On March 7, 2025 (D.C. Doc. 56) — while Mr. Kim was still serving as Acting U.S. Attorney for the Southern District of New York (through March 31, 2025) — AUSA Finkel, Mr. Kim's subordinate and Mr. Gumaste's colleague, filed an opposition to the Probation Department's February 21, 2025 (D.C. Doc. 55) affirmative recommendation that Petitioner's supervised release be terminated early. This Court denied early termination on April 2, 2025 (D.C. Doc. 58). See Ex. V.

**Petitioner pleads, in the alternative, the cumulative effect of constitutional errors under** *Brecht v. Abrahamson*, **507 U.S. 619 (1993).** Petitioner does not rely on rhetoric or speculation for cumulative-error purposes; he relies on the totality of the constitutional deficiencies set out in Grounds One through Five.

## X.  REQUIRED PROCEDURAL RELIEF — RULE 6, RULE 7, RULE 8

**Section 2255(b) requires an evidentiary hearing unless the motion and the records of the case "conclusively" show that the prisoner is entitled to no relief.** Where, as here, the motion alleges that the appellate record was itself shaped by conflict-burdened counsel, summary denial is inappropriate. *Chang,* 250 F.3d at 85–86; *Puglisi,* 586 F.3d at 213. Rule 6 of the Rules Governing § 2255 Proceedings authorizes targeted discovery on good cause; *Bracy v. Gramley,* 520 U.S. 899 (1997), supplies the good-cause standard; *Harris v. Nelson,* 394 U.S. 286 (1969), is the parent authority. Rule 7 permits record expansion. Rule 8(c) authorizes appointment of counsel if a hearing is warranted; 18 U.S.C. § 3006A independently supports appointment where the interests of justice require.

**Petitioner's principal first-stage ask is that the Court not deny without (i) appointment of conflict-free counsel; (ii) the limited Rule 6 discovery requested in Section XI of the Motion; (iii) expansion of the record under Rule 7; and (iv) an evidentiary hearing under § 2255(b) and Rule 8.** Vacatur is reserved for after the developed record. Monetary return under *Nelson v. Colorado,* 581 U.S. 128 (2017), is reserved for after vacatur and after determination of the reprosecution posture.

## XI.  CONCLUSION

**Petitioner respectfully requests that this Court (i) refer the Reassignment Motion to the Chief Judge or another judge of this District; (ii) appoint conflict-free counsel under Rule 8(c) and 18 U.S.C. § 3006A; (iii) authorize limited Rule 6 discovery; (iv) expand the record under Rule 7; (v) hold an evidentiary hearing under § 2255(b) and Rule 8 on the disputed factual questions identified in the Hearing-Required-Facts Table; (vi) vacate the conviction and sentence on a developed record; and (vii) reserve monetary return under *Nelson* until after vacatur and reprosecution-posture determination.**

**Petitioner does not ask the Court to decide factual innocence or vacatur on the present papers alone.** Petitioner's first-stage request is narrower: the Court should not summarily deny a motion whose disputed facts concern counsel advice, conflict, allocution shaping, late Brady material, PSR abandonment, and Wells Fargo materiality/inducement issues that cannot be resolved conclusively on the existing record.

Respectfully submitted,

_____

/S/ Seth Andrew, pro se
2020 Forest Hill Trace
Coralville, Iowa 52241
Telephone: 212-865-7617
Email: sethaarongrossandrew@gmail.com
Dated: May 14, 2026

### CERTIFICATE OF SERVICE

I hereby certify that on May 14, 2026, I served a true and correct copy of the foregoing Memorandum of Law in Support of Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 on the United States Attorney's Office, Southern District of New York, Attention: Chief, Criminal Division, 26 Federal Plaza, 37th Floor, New York, New York 10278, by FedEx Priority and electronic mail.

_____

/S/ Seth Andrew, pro se
2020 Forest Hill Trace
Coralville, Iowa 52241
Telephone: 212-865-7617
Email: sethaarongrossandrew@gmail.com
Dated: May 14, 2026